No. 2--94--1032                              

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE               )  Appeal from the Circuit Court

OF ILLINOIS,                          )  of Kane County.

                                      )

     Plaintiff-Appellant,             )  No. 94--CF--493

                                      )

v.                                    )

                                      )

HENRY WEILMUENSTER,                   )  Honorable

                                      )  John L. Petersen,

     Defendant-Appellee.              )  Judge, Presiding.

________________________________________________________________

     JUSTICE HUTCHINSON delivered the opinion of the court: 

     The State appeals from the order of the circuit court of Kane

County granting the motion of defendant, Henry Weilmuenster, to

dismiss an indictment against him issued by a November 1992

statewide grand jury and originally filed in the circuit court of

Cook County on March 18, 1994.  We affirm.  

     On March 22, 1994, the indictment was transferred from the

circuit court of Cook County to the circuit court of Kane County

for trial.  Defendant was charged with one count of calculated

criminal cannabis conspiracy (720 ILCS 550/9(b)(West 1992)) and

three counts of cannabis trafficking (720 ILCS 550/5.1 (West

1992)).  Defendant moved to dismiss the indictment, asserting that

he had been granted immunity from criminal prosecution in a Cook

County proceeding on June 18, 1993, in return for his testimony

before another statewide grand jury.  The State responded that, in

return for his testimony, defendant had been given only limited

"use" immunity (725 ILCS 5/106C--2 (West 1992)) rather than the

more complete "transactional" immunity from criminal prosecution

(see 725 ILCS 5/106--1 (West 1992)); and that defendant knew "the

bounds of the immunity granted to him and agreed to cooperate and

testify for the State under a grant of Use Immunity."  The State

further alleged that the incriminating evidence which led to the

indictment against him was obtained independently from his

testimony before the grand jury.  After an extensive evidentiary

hearing regarding the nature and scope of the immunity promised and

given to defendant, on August 5, 1994, the Kane County court (the

court) granted defendant's motion and discharged him. 

     The State timely appeals.  The thrust of the State's arguments

is that (1) the Cook County circuit court granted use immunity and 

defendant understood its parameters; (2) no hearing was necessary

before the Kane County circuit court; and (3) the Kane County court 

improperly reviewed the findings of the circuit court of Cook

County and overturned its findings.  We disagree for the reasons

that follow. 

                          KANE COUNTY PROCEEDING

     At the hearing in the Kane County court, defendant testified

that, prior to May 13, 1993, Ron Wilson and Ron Bartlett, agents of

the Illinois State Police and a drug enforcement agency, visited

him while he was incarcerated in the Department of Corrections

(DOC) at Taylorville, seeking information during the course of a

criminal investigation.  Defendant was going to be charged with

conspiracy.  When asked if he was threatened, defendant testified:

"I was told that shit rolls downhill and I do not want to be at the

bottom when it all came down."  Defendant made a statement to the

officers.  Another visit took place at the prison on May 13, 1993. 

     Defendant testified he had been subpoenaed to testify before

a statewide grand jury on June 18, 1993.  Defendant, who was

handcuffed and shackled, was transported by the State Police and

others to a Cook County courthouse. The shackles were removed, but

he remained handcuffed.  He was placed in a holding cell until he

was brought before a judge.  Prior to that meeting, defendant met

with Amy Bertani, an assistant Attorney General, in an office of

the courthouse.  An officer was present during the meeting. 

Defendant testified that he was not advised of his right to have an

attorney present.  When he asked Bertani whether he needed an

attorney, she said, "Not at this time."  They discussed a grant of

immunity.  Defendant testified that he was not familiar with the

terms "transactional immunity" and "use immunity" and the

difference between these types of immunity was not explained to him

prior to appearing before the judge.   

     Defendant further testified that he was brought into a judge's

chambers.  The judge (Judge Hett) advised defendant of his fifth

amendment privilege not to testify and to remain silent.  Defendant

expected to exercise his right not to testify.  The judge explained

that defendant could not be prosecuted for what he was about to

say.  Bertani and the officer were present during this exchange. 

Defendant testified that he did not ask to have an attorney present

because he was told by Bertani that he did not need one at that

time; he was going before a judge to have immunity papers signed

and he did not need an attorney for that.  Defendant believed he

was granted immunity from prosecution. 

     After defendant testified before the statewide grand jury, he

was sent back to the penitentiary at Joliet to serve the remainder

of his current sentence.  Early in 1994, defendant was charged with

offenses for which he was arrested and brought before Judge

Petersen in the circuit court of Kane County.  Defendant told the

court he was 33 years old, had an eighth grade education, and

obtained a GED. 

     On cross-examination, defendant testified that agents Wilson

and Pat Farrey, who interviewed defendant in prison on May 13,

1993, told him not to discuss his conversation with anyone else. 

Defendant eventually met Bertani and again met with Farrey just

prior to testifying before the grand jury.  Defendant asked Bertani

if he needed a lawyer.  He was brought before the judge in

chambers.  When the judge asked if he was going to invoke his fifth

amendment privilege against self-incrimination if he were called

before the statewide grand jury, defendant stated that was his

intention.  When asked if he had a lawyer, defendant said he did

not have the money for a lawyer.  The judge did not ask if he

wanted a lawyer.  The judge told him that the prosecution would not

be able to use anything he said before the grand jury and that he

would have to testify if he were granted immunity.  Defendant said

he understood that.  He acknowledged that he gave up his right to

talk to a lawyer.  The judge signed an order (of immunity). 

     When agents Wilson and Bartlett visited him in prison, they

did not tell defendant he would be given immunity if he talked to

them.  The first time he heard about immunity was from Bertani,

just before he testified, after he indicated he would invoke his

fifth amendment privilege. 

     On redirect examination, defendant testified that, when he was

brought before the judge in Cook County, he had a conversation with

Bertani and Farrey.  Farrey stepped out at some point in the

conversation.  When defendant asked if he needed a lawyer, Bertani

said, "Not at this time."  Defendant said he was aware that he had

a fifth amendment right to remain silent.   Defendant said the

reason he told the judge he was not looking for a lawyer was

because he was told by Bertani that he did not need one at that

time.  No one explained the immunity to him, and he did not know

the difference between transactional and use immunity.  

     The State moved for a directed finding in its favor, arguing

that it was clear that defendant had been given use immunity in the

Cook County proceeding. Defense counsel argued that defendant

understood he was given transactional immunity from prosecution.

The court denied the State's motion. 

     Assistant Attorney General Lemons conducted the direct

examination of Amy Bertani, who was on the drug conspiracy

prosecution task force in the Attorney General's office.  She

testified she first met defendant in a small room at the courthouse

in Chicago.  Defendant was brought in by the DOC.  Special Agent

Farrey was present, along with a DOC officer.  Bertani explained

her position to defendant.  Defendant had asked about immunity. 

She explained what immunity was.  She had already prepared a

petition and order which she had with her.  If defendant invoked

his fifth amendment right, she would appear before a judge and ask

that defendant be given use immunity.  She explained to defendant

that whatever he said before the grand jury, "the State cannot use

against you in a prosecution."  She denied telling him that the

Attorney General's office was not going to prosecute him. 

Defendant appeared to understand this.  He asked if he needed a

lawyer.  She told him that he could have one if he wanted and that

one could be appointed.  She also said that "the process could

occur without that."  Defendant continued to talk, indicating he

wanted immunity. 

     When asked if there were any deals regarding defendant's

girlfriend, Bertani testified, "I do know it was our intent not to

have him serve anymore prison time."  The girlfriend, Beverly

Gibbs, testified and was never charged.  Defendant was to let

Bertani know if he had any difficulties with his parole officer. 

Bertani went to Judge Hett's office.  A court reporter was present,

and the DOC guard brought defendant in.  When the judge advised

defendant concerning appointment of counsel, defendant said he did

not want one.  The judge explained use immunity to defendant and

signed the order.  Defendant then testified before the statewide

grand jury.

     On cross-examination, Bertani stated that, when she spoke to

defendant, she was acting in her capacity as an assistant Attorney

General.  She said she explained the type of immunity she offered

defendant.  She could not recall whether she explained what other

types of immunity were available.  She believed she explained

transactional immunity to distinguish it from use immunity. 

Bertani was shown a motion for an order of immunity dated June 18,

1993, but file stamped June 17, 1994, by the clerk of the circuit

court of Cook County--one year later than the date the immunity

order was requested.  Bertani explained that she could not find the

original motion and order.  She contacted Judge Hett, who had

signed the original order and brought him a transcript of the June

1993 proceeding.  The later order signed by Judge Hett was dated

June 17, 1994.  An affidavit signed by Judge Hett and attached to

that order was filed stamped June 17, 1994.  Judge Hett signed the

June 17, 1994, order after examining the transcript.  The affidavit

states that the judge signed an order granting use immunity which

was the same as the order he signed on June 18, 1993.  

     Bertani testified she made it clear to defendant that the

immunity did not prevent the State from charging him at a later

time but the State could not use his grand jury testimony directly

or indirectly against him and that what he had previously told the

officer could be used against him.  Bertani acknowledged she told

defendant she did not intend to have him serve anymore prison time.

     Defense counsel examined Patrick Farrey as a rebuttal witness.

Farrey was employed as an agent of the Illinois State Police from

1987 to October 1993 and was involved in the criminal

investigation.  He visited defendant in prison in 1993.  The State

had not given Farrey an opportunity to review his reports before

testifying. It was Farrey's understanding that if defendant

cooperated with the investigation he would possibly not be

prosecuted.  He did not recall the exact wording of the

conversation with defendant, but it was implied that, if defendant

did not cooperate, he would be going back to prison for the

offenses Farrey was investigating and for which defendant had not

been yet charged.  Defendant had information pertinent to the

investigation.  Farrey knew Bertani as a prosecutor in the

investigating unit and was present during dozens of conversations

involving Bertani and witnesses.  When asked about Bertani's

reputation for truthfulness, Farrey answered evasively.  When

further questioned regarding Bertani's veracity, Farrey stated that

he heard statements made by Bertani that were not the way he

remembered the situations; this included some testimony he had

heard. 

     Farrey was given an opportunity to review some reports, but he

was not given his entire case file; some reports were missing.  On

cross-examination, Farrey stated he did not recall any documents

being present when defendant was interviewed regarding immunity at

the Cook County courthouse.  He recalled being present during the

entire interview.  Use immunity was not explained to defendant in

Farrey's presence.  It was his impression from conversations with

his superiors and prosecutors from the Attorney General's office

that defendant would not be prosecuted if he cooperated.  Farrey

admitted he was angry for having been subpoenaed by the State; he

was concerned about the loss of income as well as the possibility

of being sued civilly. Defendant cooperated fully with Farrey's

investigation.

     Paul West, who was also indicted, testified that he met

Bertani when he was subpoenaed to appear before the statewide grand

jury.  Bertani promised him that, if he cooperated, he would not be

prosecuted or receive any jail time. 

     In surrebuttal, Bertani denied telling Farrey that defendant

would be given complete immunity.  She stated she promised West

that he would not be subject to jail or prison and that his

cooperation would be noted.  Bertani testified regarding the arrest

of defendant and West.  She obtained recognizance bonds (I-bonds)

for them in Cook County.  However, this procedure was not honored

in Kane County, and defendant and West were arrested.  Bertani

assisted in filing a motion to nol-pros the charges which motion

was granted.  However, defendant and West were reindicted at a

later time.  The court inquired what penalty Bertani had in mind in

view of the charges being made.  She responded that probation or

conditional discharge would be sought. 

                          COOK COUNTY PROCEEDING  

     The record includes a transcript of the proceeding before

Judge Hett in Cook County on June 18, 1993.  There, the court

advised defendant that the grand jury was investigating possible

offenses of cannabis trafficking, calculated criminal cannabis

conspiracy, and money laundering.  The court informed defendant

that the State asked that "I grant you immunity.  Use immunity and

compel you to testify before the State Wide Grand Jury."  The court

asked whether defendant had a lawyer and whether he had money to

hire a lawyer to advise him in connection with the matter. 

Defendant replied he did not.  The court asked whether defendant

was looking for a lawyer to advise him before he was called to

testify.  Defendant said he was not.  The court explained that "use

of immunity would prohibit the State from filing any charges or

prosecuting you for anything you might say, anything that they can

learn as a result of what you say in the Grand Jury."   Defendant

said he understood.  The court explained that, if he lied in

testifying, he could be prosecuted for perjury.  The following

exchange took place. 

          "THE COURT: You have a right to exercise the 5th

     Amendment rights.  If you do so, *** --if you understand your

     rights, I am prepared to grant the State's motion for

     immunity, which would give you immunity from prosecution for

     anything that you say or things that they could discover as a

     result of what you say in the Grand Jury.

          Do you understand all of that?

          DEFENDANT:  Yes, sir. 

          THE COURT: Okay. And do you intend to invoke your 5th

     Amendment right, if you appear before the Grand Jury without

     immunity?

          DEFENDANT: Yes, sir. 

                                * * * 

          THE COURT: Give up your right to consult with a lawyer in

     connection with this?

          DEFENDANT: Yes, I am. 

          THE COURT: Let the record indicate I believe that Mr.

     Weilmuenster has knowingly and intelligently waived his right

     to an attorney.  I am convinced that he will exercise his 5th

     Amendment right to not testify in the absence of an order of

     immunity. I have explained the details of immunity to Mr.

     Weilmuenster.  It's my opinion that he understands the scope

     of that order of immunity."  

                      KANE COUNTY COURT FINDINGS

          After the Kane County court heard the arguments of counsel,

the court noted that the recreated motion and order for immunity

were obtained in a nonadversarial proceeding in June 1994 and did

make reference to "use" immunity--if in fact it was an order

identical to the original one signed the year before.  The court

observed that defendant was brought from the penitentiary in

chains, had an eighth grade education, and was unrepresented by

counsel.  The court found Farrey's testimony truthful and candid. 

Although Farrey was not given an opportunity to look at his notes,

he believed that if defendant testified he would not be prosecuted

but if defendant did not cooperate he would possibly go to prison

on other charges.  

     The court noted that Bertani interviewed defendant in a

custodial setting and told defendant that she did not want him to

go to jail. The court was concerned that a defendant be

sufficiently and clearly admonished of his rights and of his

understanding especially when he is in a custodial setting and

unrepresented by counsel, when a grant of immunity is being

considered.  The court granted defendant's motion. 

                                 ANALYSIS

     When use immunity is granted, a witness' compelled testimony,

or leads derived therefrom, may not be used in his prosecution. 

Under transactional immunity, the witness is fully immunized from

prosecution for any offenses to which his compelled testimony may

relate and transactional immunity will not be transmuted into use

immunity.  People ex rel. Cruz v. Fitzgerald, 66 Ill. 2d 546, 549,

550-51 (1977).  When statutory transactional immunity is granted in

one county, it serves wholly to immunize a person from prosecution

in any other local jurisdiction of the State.  Cruz, 66 Ill. 2d at

551.  The State argues that the grant of a particular type of

immunity by one county should be honored and recognized by another

county and that one circuit judge may not review and disregard the

orders of another circuit judge.  The State asserts that Judge Hett

explained the type of immunity offered (use immunity) and that

defendant understood its scope.  Defendant argues, inter alia, that

the circuit court has the inherent authority to dismiss a criminal

prosecution when a violation of due process has been demonstrated. 

     The difficulty with the State's position is that, without

specifically raising the issue here or below, it is indirectly

arguing that the doctrine of res judicata or collateral estoppel

should be applied in its favor.  We do not believe that the circuit

court of Kane County was "reviewing" or disregarding the orders of

another circuit court.  Rather, the court examined matters outside

the record to determine defendant's understanding of the immunity

proceeding, whether he voluntarily consented to limited use

immunity, and whether the State made promises which exceeded the

findings reflected in Judge Hett's orders.  The court was asked to

grant a dismissal of the charges based on disputed matters of fact

appearing outside the record.  See 725 ILCS 5/114--1(a)(3), 1(d)

(West 1994).  

     A final judgment may have preclusive effects in a subsequent

action under the doctrine of res judicata or of collateral

estoppel.  The doctrine of res judicata provides that a final

judgment on the merits is conclusive as to the rights of the

parties and their privies and, as to them, precludes a subsequent

action involving the same claim, demand, or cause of action. 

Stratemeyer v. West, 136 Ill. App. 3d 1095, 1096 (1985). 

Collateral estoppel is a branch of res judicata which precludes

relitigating the same issue or a finding on a controlling material

fact decided in another, different action between the same parties

or their privies.  See Cirro Wrecking Co. v. Roppolo, 153 Ill. 2d

6, 19-20 (1992); see also People v. Moore, 138 Ill. 2d 162, 166

(1990).  Res judicata precludes relitigation of a single cause of

action between two parties, extending to both causes actually

litigated and those which might have been, while collateral

estoppel is limited to particular facts and issues in common

between the prior and subsequent actions which are material to the

dispositions of both.  Cirro, 153 Ill. 2d at 20.  

     Because it is obvious that the causes of action in Cook County

and Kane County were not identical in the present case, the

threshold issue before us is whether issue preclusion (i.e.,

collateral estoppel) should be applied.  Because of the unusual

circumstances present here, we find that collateral estoppel should

not be applied and that defendant was not precluded from

relitigating issues in support of his motion to dismiss the

indictment. 

     In deciding whether it would be fair to apply issue

preclusion, courts may consider whether the parties were true

adversaries and whether the party against whom preclusion is sought

was unable, as a matter of law, to appeal the judgment in the

initial action.  See Cirro, 153 Ill. 2d at 21-22.  Even where all

the usual pleading elements of the doctrine are met, collateral

estoppel will not be applied where an injustice would result or

when the party against whom the estoppel is asserted did not have

a full and fair opportunity and an incentive to litigate the issue

in the prior proceeding (Bulfin v. Eli Lilly & Co., 244 Ill. App.

3d 785, 788, 790-91 (1993)) or where relitigation of the issue is

warranted by differences in the quality or extensiveness of the

procedures followed in the two courts (People v. Filitti, 190 Ill.

App. 3d 884, 886 (1989)).  

     In criminal cases, application of the doctrine against a

defendant is severely limited, particularly where an issue decided

adversely to the defendant will be effectively insulated from

review.  People v. Mordican, 64 Ill. 2d 257, 262 (1976).  A

defendant may be permitted to relitigate an issue where additional

evidence becomes available or where there are "peculiar

circumstances."  Mordican, 64 Ill. 2d  at 261.  In criminal cases,

the doctrine of collateral estoppel should not be applied with a

hypertechnical, archaic, 19th century approach, but with realism

and rationality.  People v. Mordican, 33 Ill. App. 3d 196, 200

(1975), aff'd, 64 Ill. 2d 257 (1976).  Collateral estoppel may be

avoided, for example, in a case where the defendant was

inadequately represented by counsel, this resulted in the failure

to present available evidence, and the overall circumstances show

that he was denied a full and fair hearing.  See, e.g., People v.

Stiles, 95 Ill. App. 3d 959, 962-66 (1981).  Based on the foregoing

principles and the peculiar circumstances of this case, we believe

collateral estoppel should not be applied against defendant.  Here,

defendant was induced to testify before the grand jury under what

appear to be coercive circumstances, in a proceeding where he was

without the benefit of counsel.  There was a gross disparity in the

bargaining power of the parties.  Defendant was not offered counsel

and was led to believe he did not need counsel.  The Cook County

proceeding was essentially uncontested and lacked truly adversarial

safeguards.  His ostensible consent to any order of immunity would

likely have precluded appellate review.  To the extent that the

Cook County order could conceivably be viewed as agreed or

consensual (though we recognize it is not technically an agreed

order), it would not ordinarily be subject to review; however,  we

believe such an order could be set aside if the order were shown to

be the result of misrepresentation, coercion, incompetence, gross

disparity in the position or capacity of the parties, or newly

discovered evidence.  See In re Haber, 99 Ill. App. 3d 306, 309

(1981).  If, in fact, defendant mistakenly believed that he had

full immunity, he had little incentive to litigate the scope of the

immunity from prosecution or to appeal.

     Furthermore, we observe that the State appears to have failed

to raise specifically the defense of res judicata or collateral

estoppel and participated fully in relitigating the facts and

issues it now contends should not have been considered by the Kane

County court; the State has thus waived the issue whether that

court improperly reconsidered matters already adjudicated. 

Caporale v. Shannon Plumbing Co., 20 Ill. App. 3d 511, 513 (1974). 

     The Kane County court properly considered evidence not

previously of record regarding whether the State made other

enforceable promises to defendant not to prosecute--which promises

were not brought out in the Cook County proceeding.  We believe

such promises made in return for a defendant's cooperation, if

supported by the evidence, may be enforced independently of a

statutory grant of immunity.  See People v. Starks, 106 Ill. 2d

441, 452 (1985); People v. English, 31 Ill. 2d 301, 308 (1964);

People v. Smith, 233 Ill. App. 3d 342, 351 (1992); People v.

Pierson, 230 Ill. App. 3d 186, 189-91 (1992).

     Having determined that issue preclusion will not be applied

here because of the peculiar circumstances of this case, we now

consider whether the Kane County court's ruling was manifestly

erroneous.  Smith, 233 Ill. App. 3d at 351.  A trial court has the

inherent authority to dismiss a criminal indictment where the

defendant has been denied due process or there would be a

miscarriage of justice.  People v. Newberry, 166 Ill. 2d 310, 313-

14 (1995).  It is undisputed that defendant fulfilled his part of

the agreement to cooperate and to testify before the grand jury. 

The nature and scope of the State's extrajudicial promises made to

defendant and the determination whether defendant knowingly and

voluntarily waived his constitutional right to counsel and his

privilege from self-incrimination were factual questions which the

trial court resolved in favor of defendant after a full evidentiary

hearing. 

     Defendant testified that he was not familiar with 

transactional and use immunity and the distinctions between them

were not explained to him.  Defendant was not offered the

assistance of counsel and believed he did not need the assistance

of counsel based on the State's representations.  Acting for the

State in her official capacity, Bertani testified she could not

recall whether she explained what other types of immunity were

available, but believed she had explained the difference between

use and transactional immunity. She acknowledged that she told

defendant that she would help him with his parole officer; it was

her intent that he not serve any more jail or prison time.  The

court particularly noted this expressed intent.  The court was

troubled with the authenticity of the purportedly identical order

of immunity signed by Judge Hett in an ex parte proceeding one year

later. The court clearly had misgivings regarding whether, in a

custodial setting and unrepresented by counsel, defendant was

sufficiently admonished so as to understand the nature and scope of

the immunity he had received.      

     Farrey, whom the court found truthful and candid, testified

that it was his impression defendant would not be further

prosecuted if he cooperated.  (Farrey's report, dated May 13, 1993,

indicates that defendant was cooperating in the hope of avoiding

further prosecution and incarceration.)  He testified that

defendant cooperated fully.  Farrey's testimony also tended to

impeach that of Bertani.  

     A defendant's right to due process is clearly implicated when

the government makes promises of immunity from prosecution. See

Smith, 233 Ill. App. 3d at 350-51.  Where the evidentiary record

discloses ambiguity in the scope of the government's agreement to

confer immunity, basic considerations of fairness dictate that any

ambiguity in the agreement should be resolved in favor of the

defendant.  See People v. Romero, 745 P.2d 1003, 1010 (Colo. 1987). 

The problem of possible confusion between transactional and use

immunity is not remote.  We hold that fundamental fairness requires

that a defendant--particularly one unrepresented by counsel--who is

called upon to surrender his privilege against self-incrimination

in return for a grant of immunity, must be fully and fairly

informed by the State of the scope of the protection being

afforded; an oblique or perfunctory reference to the type of

immunity offered is insufficient.  See People v. Masiello, 28

N.Y.2d 287,___, 270 N.E.2d 305, 308-09 (1971).  A court entering an

order of immunity must admonish such a defendant carefully of the

nature of the rights being waived and of the consequences of

defendant's decision to ensure that his decision is made knowingly

and voluntarily.  See People v. Lego, 168 Ill. 2d 561, 564 (1995). 

The State could easily have avoided the problems presented in this

case by reducing the agreement to writing and by being meticulous

in its procedures and its representations to the court.

     The Kane County circuit court resolved the conflicts in the

evidence and assessed the credibility of the witnesses.  It could

reasonably have found from the evidence that defendant did not

understand that he was given only use immunity and that he thought

he was consenting to transactional immunity.  Alternatively, the

court could reasonably have found that defendant was, in fact,

given full immunity from prosecution based on the oral promises

made by the State in return for his cooperation. In either event,

the court implicitly concluded it would be unjust to prosecute

defendant further under the circumstances.  We concur.  Therefore,

we hold that the court's decision was not manifestly erroneous.

     Society reposes in its prosecutors an awesome and sacred

trust.  They alone possess the authority to institute the sole

state-sanctioned process through which a citizen's liberty and life

may legally be ended.  Not surprisingly, the grant of such

staggering power carries with it commensurate responsibilities. 

Prosecutors have as their preeminent goal not victory, but justice. 

See, e.g., People v. Lyles, 106 Ill. 2d 373, 411-12 (1985)(it is

the prosecutor's responsibility to safeguard the constitutional

rights of all citizens, including the defendant's); see also 145

Ill. 2d. R. 3.8(b)(prosecutor must disclose exculpatory and

mitigating evidence).  Without a doubt, prosecutors must discharge

their duties with vigor and zealousness.  See United States v.

Young, 470 U.S. 1, 7, 84 L. Ed. 2d 1, 7, 105 S. Ct. 1038, 1042

(1985); see also 134 Ill. 2d R. 1.1, Preamble to Illinois Rules of

Professional Conduct.  However, prosecutors who--blinded by this

zealousness--lose sight of their ultimate goal breach both their

ethical code and public trust.  They do so at their peril.

     The judgment of the circuit court of Kane County is affirmed. 

     Affirmed.  

     McLAREN, P.J., and RATHJE, J., concur.