STATE OF MARYLAND *v.* ROBERT LEE THOMPSON

[No. 852, September Term, 1980.]

*Decided March 9, 1981.*

The cause was argued before GILBERT, C. J., and MORTON and MOORE, JJ.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ralph M. Murdy, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Arthur M. Frank,* with whom were *Nathanson & Frank, P.A.* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Apparently aggrieved at appellee's acquittal by a jury in the Criminal Court of Baltimore on narcotic charges, an Assistant State's Attorney opted to reopen a stet in another case that had been entered as the result of a plea bargain. The appellee, Robert Lee Thompson, vigorously resisted the effort to reopen the stet and filed a "Motion to Enforce a Plea Agreement." The matter was heard before Judge Joseph I. Pines, and he granted the appellee's motion. The State appealed.

The single issue posited by the State is "[w]hether the trial court erred in dismissing the criminal informations against Appellee as a result of its determination that removal of the cases from the stet docket would be unfair and inequitable."

## — THE FACTS —

On May 15, 1979, the State called to trial two Criminal Informations charging the appellee with violations of the Controlled Dangerous Substances Act. Negotiations took place between the State and the appellee. It was agreed, according to Timothy Doory, Esq., an Assistant State's Attorney, that "the . . . [appellee, Thompson,] would make a good faith effort to provide some information to the cases that the district officers were interested in within the next 60 days, that the [State's] case [against appellee] would then be, we would stet the case that day based on his assurance of a good faith effort."

Inasmuch as the stet was to be entered in open court, and because of the possibility of jeopardizing the appellee, the reason for the stet stated in the record "was because the State was not in a position to try the case at . . . [that] time." The true reason, however, was made known to Judge Grady before the false reason was supplied in open court.

Mr. Doory further testified before Judge Pines that it was agreed that if appellee fulfilled his part of the bargain, "the stet for all intents and purposes would have remained in effect. The case would have never been recalled and would have just died its natural death."

On cross-examination Doory acknowledged that, to the best of his recollection, "there was no mention" of the effect on the agreement with respect to any subsequent offense. It was not a condition of the stet that appellee refrain from subsequent criminal conduct. We make clear that Mr. Doory was not the Assistant Prosecutor who sought to reopen the stet.

Other testimony adduced by the appellee indicated that he had made good on his part of the bargain. The effort to reopen the stet was made on January 9, 1980, approximately eight months after it had been entered and six months after the appellee's part of the bargain had been completed.

The prosecutor resisted the appellee's motion to enforce the "plea agreement" on the ground that "[w]e are dealing with a stet, not a plea bargain." The thrust of his contention to Judge Pines was that because Thompson did not plead guilty to any charge, there could be no plea bargain. In short, he advanced the turbid theory that a plea bargain "involves a plea," while a stet involves no plea by an accused. That argument is novel but unavailing.

The prosecutor in the instant case is the same one that unsuccessfully sought Thompson's conviction on subsequent narcotic charges. He argued to the trial court that "[t]he fact that the Jury found . . . [appellee] not guilty does not indicate that there was no probable cause for the charge and that is in fact brought out even further by the fact that the case went to the Jury."

Whether probable cause for the bringing of the subsequent charge existed is totally irrelevant. The "bottom line" is that the jury found appellee not guilty and acquitted him of the charges. That the prosecutor did not share that view matters not one whit.

The crystalline inference that permeates the record in this case is that the Assistant State's Attorney was piqued because of the jury's verdict, and he seized upon the stet as a way of balancing the scales. In fact, he told Judge Pines that if the jury had convicted the appellee, the instant case would have been closed.

Despite the State's unusual view of the agreement entered into between it and the appellee, we think it unmistakable that a "plea bargain" was struck.[1] A "plea bargain" may take many forms; it is multivious in nature. For example, in exchange for information concerning criminal activity, the State may agree to *nol pros* a case against the informer; for other information, it may agree to confess not guilty. It is also possible that the State, in consideration of the receipt of information, may agree not to seek an indictment of the informer. Obviously then, the State may enter into an agreement with an accused to do exactly what it did in the instant case, namely stet the indictment in exchange for cooperation.

A "plea bargain," by any other name, remains a plea bargain. It is the substance of the agreement, not the name it is given, to which we look in order to determine whether a pact was struck.

We think that once the State has made a bargain, it is bound to adhere to the agreement so long as the accused performs his part, and we eschew the State's attempt by semantics to renege on its covenant.

The office of State's Attorney is a public trust. The awesome power, vested by the people in the State's Attorney,

---

1. We use the term "plea bargain" in its broad sense as meaning any agreement between the prosecutor and the defendant whereby a defendant agrees to perform some act or service in exchange for more lenient treatment by the prosecutor. We do not use the term in its narrow sense as in Md. Rule 731.

should not be employed for the purpose of applying balm to a wounded ego or to the fulfillment of a personal vendetta. *See generally Sinclair v. State,* 278 Md. 243, 363 A.2d 468 (1976).

A plea bargain, the Court of Appeals declared in *State v. Brockman,* 277 Md. 687, 694, 357 A.2d 376, 381 (1976), *aff'g Brockman v. State,* 27 Md. App. 682, 341 A.2d 849 (1975), is "entitled to judicial enforcement," citing *Santabello v. New York,* 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971). *See also Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974); *Sturgis v. State,* 25 Md. App. 628, 336 A.2d 803 (1975). Judge Pines did exactly what the appellate decisions directed him to do, and we, accordingly, affirm his order.

> *Order affirmed.*
> *Costs to be paid by the Mayor and*
> *City Council of Baltimore.*