THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NANCY J. SMITH, Defendant-Appellee.

Second District   No. 2—90—0342

Opinion filed September 1, 1992.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers, John X. Breslin, and Judith Z. Kelly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

The State appeals from the order of the circuit court which dismissed two indictments against defendant, Nancy J. Smith. (See 134 Ill. 2d R. 604(a)(1).) The original indictments against defendant were dismissed by the prosecutor in exchange for defendant's cooperation in assisting undercover police officers to make purchases of cocaine in Ogle County. The trial court dismissed the new indictments on the basis that the reinstatement of the charges against defendant following a dismissal based on her cooperation with the police violated defendant's due process rights. On appeal, the State contends that the trial court abused its discretion in dismissing the latter indictments. We affirm.

On May 11, 1988, the grand jury returned two indictments against defendant, each charging one count of the unlawful delivery of marijuana (Ill. Rev. Stat. 1991, ch. 56½, par. 705(d)). On June 14, 1988, defendant appeared in court, and her attorney and the prosecutor presented to the trial court an agreement whereby defendant would cooperate with the State's Attorney's office and the Department of Criminal Investigation of the State Police to provide them with information leading to the purchase of cocaine from a third-party source. In exchange for defendant's cooperation, the State's Attorney would dismiss the charges against defendant. The parties intended the transcript to serve as the written document of the agreement.

According to the facts set forth in *People v. Lambrecht* (1992), 231 Ill. App. 3d 426, defendant approached Mark Lambrecht during June 1988 about helping her get some cocaine. On July 1, 1988, defendant arranged for Ronald Vandergrift, the undercover officer with whom she was working, to meet with Lambrecht to purchase a

quarter ounce of cocaine. Following several telephone calls between Lambrecht, defendant and Vandergrift, Vandergrift and defendant again met Lambrecht to purchase cocaine on July 8. Vandergrift purchased one-half ounce of cocaine from Lambrecht. The final sale of cocaine was transacted without defendant, and Lambrecht was arrested on August 26, 1988. *Lambrecht,* 231 Ill. App. 3d at 430-32.

On August 30, 1988, the State's Attorney filed a motion to dismiss the charges against defendant. According to the motion, "defendant has cooperated with the Illinois State Police which has assisted *** with arresting one, Mark Lambrecht, with delivery of two ounces of cocaine." The court dismissed the indictments.

As further set forth in *Lambrecht,* an investigator for Lambrecht's attorney approached defendant in March 1989 and took a statement from her. In this statement, defendant "indicated that [Lambrecht] never would have done what he did if she had not contacted him and pushed him into it." (*Lambrecht,* 231 Ill. App. 3d at 429.) At Lambrecht's trial, defendant testified for the defense. According to her trial testimony, defendant "decided to involve [Lambrecht] in the setup because she thought he was naive and easy to fool." (*Lambrecht,* 231 Ill. App. 3d at 430.) Defendant "heard rumors" that Lambrecht had sold cocaine to someone at a restaurant in Oregon, Illinois, and that he had worked with a person who talked to defendant about selling drugs. However, defendant testified that Lambrecht had not talked to her about selling drugs. Instead, defendant asked Lambrecht to help her buy cocaine because she was in trouble and needed a lot of money. (*Lambrecht,* 231 Ill. App. 3d at 430-31.) The jury found Lambrecht guilty, and his conviction was affirmed on appeal.

On January 18, 1990, the State again indicted defendant for the two delivery charges. Defendant filed a motion to dismiss the indictments on the following bases: double jeopardy; *res judicata;* section 114—1(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 114—1(a)(3)); due process; and specific performance. In her affidavit, defendant averred that, among other things, she contacted the State's Attorney's office in December 1989 to determine if it needed her to testify against Lambrecht, that on January 2, 1990, she was subpoenaed to testify, and she testified truthfully.

The court considered the transcript from the hearing on June 14, 1988, but did not review any of the evidence from Lambrecht's trial. The parties submitted memoranda of law addressing the issues of double jeopardy and *res judicata,* and the court ruled in a memorandum opinion.

The trial court found that defendant and the State "entered into an agreement that is akin to a plea agreement," so the court based its decision on due process principles. The court found that, by moving to dismiss the charges, the prosecutor acknowledged the receipt of the benefit from defendant's performance. The court also found that the prosecutor's use of the phrase "outright dismissal" indicated that the prosecutor intended the dismissal to be an acquittal, not a *nolle prosequi*. The court concluded that the reindictment of defendant was a denial of due process. Accordingly, the court dismissed the new indictments with prejudice. The State filed a motion to reconsider, which the court denied. This timely appeal followed.

On appeal, the State first argues that the trial court failed to follow the procedure it proposed, *i.e.*, a bifurcated proceeding in which the court would rule first on whether *res judicata* or double jeopardy principles barred the refiling of the indictments before considering whether the agreement between the parties was enforceable. According to the State, the trial court was required to hold an evidentiary hearing to determine the latter issue. The State requests that we vacate the dismissal and remand the cause for an evidentiary hearing, citing *People v. Starks* (1985), 106 Ill. 2d 441, 453.

■ Remand is unnecessary here because the agreement was set forth in the transcript of the June 14, 1988, hearing, which the court had before it. Thus, unlike the situation in *Starks*, where it was not apparent that there was an agreement or what its terms were, here the agreement and its terms were before the trial court when it rendered its decision.

However, the State objects to the trial court's refusal to hold an evidentiary hearing because the trial court considered the terms of the agreement when it ruled on the motion to dismiss. The State argues that the trial court erred in finding that the prosecutor did not intend to nol-pros the charges when the first dismissal was granted in August 1988 and in finding that defendant had fulfilled her obligations under the agreement. The State asserts that the court misinterpreted the transcript of the June 14, 1988, hearing, particularly the prosecutor's remark about an "outright dismissal." According to the State, the "outright dismissal" depended on defendant testifying truthfully against Lambrecht and cooperating with the State's Attorney's office in the preparation of its case against Lambrecht. Implicit in this argument is the contention that the trial court erred in finding that the agreement did not extend to defendant's cooperation at Lambrecht's trial.

■ The State's argument regarding the lack of an evidentiary hearing is without merit. The trial court's decision was not based on the specific performance theory or a determination that defendant fulfilled her part of the bargain. The trial court found that the reindictments were barred by the principles of *res judicata*, double jeopardy and due process. Underlying this finding was the court's conclusion that the prosecutor did not intend to nol-pros the charges when he moved to dismiss them on August 30, 1988. To make that determination, the trial court had to discern the terms of the agreement to ascertain whether the parties intended the dismissal to be a *nolle prosequi* or an acquittal.

The determination of the terms of the agreement is a factual finding, which we will not disturb unless that determination was clearly erroneous. *People v. Navarroli* (1988), 121 Ill. 2d 516, 521-22.

At the June 14, 1988, hearing, the prosecutor stated:

"In exchange for the *outright dismissal*, the minimum expectation from the defendant is that, number one, she will cooperate with the State's Attorney's Office and with the Department of Law Enforcement, which means she'll testify eventually, *if necessary*, in a courtroom. She'll testify truthfully, and provide us with the information that we need in preparing for the trial, of course, as a witness would do. Initially, this involves her taking an undercover police officer, here in Ogle County, to some location here in Ogle County, and that there will be a purchase, and it must be actually cocaine, *** at a minimum of two ounces." (Emphasis added.)

Defense counsel explained that defendant was not admitting to any of the allegations against her, nor was she waiving any defenses. In addition, defense counsel stated that defendant would receive "[c]omplete immunity against prosecution of any existing or possible [*sic*] existing" charges. Finally, the parties explained:

"MR. FEARER [Defense counsel]: She will fully cooperate with the prosecution, as well as with the activity that leads up to the arrest of any individuals that may be dealt with in this situation, but it also needs to be made clear that her immunity and her dismissal is not contingent on a conviction of these individuals. She will cooperate, but she can't assure a conviction, that's up to the State's Attorney, and the police.

MR. SCHUMACHER [Prosecutor]: That's true, just the actual delivery occurs."

The motion for the voluntary dismissal of the charges represented that the State's Attorney was seeking dismissal because defendant cooperated with the State police in securing the arrest of Lambrecht.

Based on the June 14, 1988, transcript in conjunction with the August 30, 1988, motion for voluntary dismissal, the trial court found that the State's Attorney's office agreed to dismiss the charges, not nol-pros them, if defendant agreed to act as a confidential informant and that cooperation resulted in an arrest. The court also found that when the State's Attorney moved for dismissal of the charges following Lambrecht's arrest, the State's Attorney acknowledged that defendant had fulfilled her obligations.

We conclude that the trial court's findings were not manifestly erroneous. According to the June 14, 1988, transcript, defense counsel recognized that any immunity afforded to defendant would vanish if she did not succeed in procuring a seller for the undercover agents. However, contrary to the State's assertion, that does not mandate the conclusion that defense counsel anticipated that defendant could be reindicted. Rather, defense counsel understood that if defendant did not successfully procure an arrest, the State would not drop the charges against her. Once the State elected to dismiss the charges, the dismissal was to be absolute. If a *nolle prosequi* had been intended, it is likely that the charges would have been nol-prossed on June 14, 1988.

The trial court found that the emphasis of the agreement was that defendant would act as a confidential informant to enable the agents to arrest a cocaine seller. When the State moved to dismiss the charges on August 30, 1988, it must have believed that defendant's cooperation was complete: that she had fulfilled her end of the bargain. It therefore moved for "outright dismissal" pursuant to the agreement.

These factual findings support the trial court's conclusion that the August 30, 1988, dismissal was with prejudice and operated as an acquittal. Thus, the new indictments violated defendant's due process rights, violated the prohibition against double jeopardy, and were barred by *res judicata*. See *People v. Creek* (1983), 94 Ill. 2d 526, 531-34.

We also affirm the judgment of the trial court on the ground that defendant fulfilled her part of the agreement which the court could enforce as an executed agreement. (See *People v. Williams* (1991), 143 Ill. 2d 477, 485.) We decide this issue despite the trial court's failure to hold an evidentiary hearing because, as discussed above, the trial court found that the State's Attorney admitted that defendant's

cooperation was completed when Lambrecht was arrested. In addition, the State's Attorney represented, at the June 14, 1988, hearing, that defendant's cooperation in Lambrecht's prosecution was conditioned on the prosecution needing defendant's testimony. Since defendant was not involved in the last transaction between Lambrecht and the undercover officer (*People v. Lambrecht*, 231 Ill. App. 3d at 429), her assistance was not necessary at trial. This is reflected in the State's Attorney's decision not to subpoena defendant to testify. We will therefore address the State's argument regarding this issue.

The State argues that even if defendant fulfilled her part of the agreement, the agreement was unenforceable and the trial court should not have dismissed the indictments. The State relies on *People v. Navarroli* (1988), 121 Ill. 2d 516, and *People v. Boyt* (1985), 109 Ill. 2d 403. In those cases, the court found that the State was not bound to honor its plea agreement because the defendant in each case had not pled guilty, and thus he "still ha[d] the option of pleading not guilty and proceeding to trial." *Navarroli*, 121 Ill. 2d at 524; see *Boyt*, 109 Ill. 2d at 415.

The trial court has the authority to dismiss a criminal indictment where the defendant has been denied due process. (*People v. Burrows* (1992), 148 Ill. 2d 196, 223.) The agreement at issue here was not a plea agreement, but was instead a "cooperation-immunity" agreement. (See *United States v. Johnson* (8th Cir. 1988), 861 F.2d 510, 512.) Thus, this cause is distinguishable from the State's cited authorities, *Boyt* and *Navarroli*, which concern plea agreements.

■ A "cooperation-immunity" agreement differs from a plea agreement in that the detrimental reliance for a plea agreement is the defendant's waiver of the right to a trial (*Navarroli*, 121 Ill. 2d at 528), whereas "[w]ith an agreement not to prosecute, parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity" (*Johnson*, 861 F.2d at 512). The benefits of a plea agreement include the "prompt and largely final disposition of most criminal cases; *** avoid[ing] much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; *** protect[ing] the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, *** enhanc[ing] whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned." (*Santobello v. New York* (1971), 404 U.S. 257, 261, 30 L. Ed. 2d 427, 432, 92 S. Ct. 495, 498.) The "cooperation-immunity" agreement,

however, is designed, in the context of the illegal drug trade, to enable law enforcement officers to apprehend large-scale drug dealers, "a tactic unequivocally desired by law enforcement and readily accepted by the courts in the never-ending struggle to curb and combat the nefarious enterprise of drug trafficking and usage." *People v. Schmitt* (1988), 173 Ill. App. 3d 66, 101, *rev'd on other grounds* (1989), 131 Ill. 2d 128.

As a result, the due process implications are different. In the plea agreement scenario, if the defendant has not yet pled guilty, he may still proceed to trial. (*Mabry v. Johnson* (1984), 467 U.S. 504, 507-08, 81 L. Ed. 2d 437, 442, 104 S. Ct. 2543, 2546.) Here, however, it is the violation of "the right not to be haled into court at all *** [which] operated to deny [defendant] due process of law." *Blackledge v. Perry* (1974), 417 U.S. 21, 30-31, 40 L. Ed. 2d 628, 636, 94 S. Ct. 2098, 2104.

A "cooperation-immunity" agreement was the subject of the appeal in *Schmitt*, where the defendant was arrested for selling drugs to an undercover agent. The arresting agents asked the defendant to cooperate with them in identifying, obtaining evidence against and arresting his drug source. The defendant fully cooperated, and the agents arrested the supplier. The defendant contended that the agents promised that he would not be prosecuted in exchange for his cooperation. The agents testified that they merely promised the defendant that they would notify the State's Attorney's office of the defendant's cooperation. (*Schmitt*, 173 Ill. App. 3d at 99.) In remanding the cause for an evidentiary hearing on the defendant's motion to dismiss the indictment, the appellate court held that "[t]he State should be required to fulfill its part of the agreement" because "a contrary holding would constitute judicial approval of the government violating its agreement, a reprehensible aberration." (*Schmitt*, 173 Ill. App. 3d at 101.) The court distinguished *Navarroli* as a post-indictment negotiated plea agreement and because the State's Attorney in *Navarroli* denied both the existence of the agreement and its terms as claimed by the defendant. *Schmitt*, 173 Ill. App. 3d at 103-04.

*Navarroli* also is distinguishable from the present cause in that here the agreement was not part of a plea bargain. Furthermore, the agreement was approved by the trial court, and the court dismissed the indictments, on the State's motion, as a part of that "cooperation-immunity" agreement. The facts of this cause more closely resemble those in *People v. Starks* (1985), 106 Ill. 2d 441. In *Starks*, the supreme court analyzed the enforceability of an agreement between the State and the defendant which required the State to dismiss charges

against the defendant if he took and passed a polygraph examination. The court held that if the defendant fulfilled his part of the agreement, the State must fulfill its part. *Starks*, 106 Ill. 2d at 452.

The supreme court in *Starks* quoted from and relied on a Florida case, *Butler v. State* (Fla. App. 1969), 228 So. 2d 421, in which the prosecutor agreed to drop charges if the defendant passed a polygraph test. If the defendant failed the polygraph test, those results would be admissible at his trial. The defendant passed the test, and the charges were nol-prossed. However, the State subsequently indicted the defendant for the same offense. The Florida Appellate Court held that the State was bound to abide by its agreement with the defendant. *Butler*, 228 So. 2d at 424.

▇▇ The trial court here found that the agreement was that, in exchange for procuring a cocaine seller for the undercover police officers, the State would dismiss the charges against defendant and would grant her immunity as to those charges. As in *Butler*, the State here received the full benefit of its bargain. The trial court determined that the institution of new charges against defendant violated her due process rights and that dismissal of the charges with prejudice was the appropriate remedy. We conclude that the trial court did not err in this regard.

▇▇ Finally, we affirm the court's dismissal of the new indictments as a dismissal pursuant to section 114—1(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 114—1(a)(3)). According to section 114—1, the trial court may dismiss an indictment if "[t]he defendant has received immunity from prosecution for the offense charged," and the State may not return a new indictment if the charge was dismissed for that reason. (Ill. Rev. Stat. 1991, ch. 38, pars. 114—1(a)(3), (e).) The trial court found that the State's Attorney granted defendant immunity from prosecution on these charges by dismissing the indictments after defendant "cooperated with the Illinois State Police which has assisted *** with arresting *** Mark Lambrecht" for the delivery of cocaine. As we discussed above, this finding is not manifestly erroneous. Thus, the trial court could have properly dismissed the indictments pursuant to section 114—1.

The order of the circuit court is affirmed.

Affirmed.

McLAREN and DUNN, JJ., concur.