747 A.2d 1199

**Valentino Maurice JACKSON**

v.

**STATE of Maryland.**

**No. 62, Sept. Term, 1998.**

Court of Appeals of Maryland.

March 13, 2000.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The issues this Court is called upon to resolve on this appeal are whether, when the defendant has performed as required, the State's refusal to honor its agreement to dismiss the charges against the defendant is appealable under the collateral order doctrine and whether the agreement between the State and the defendant, the subject of the appeal, must be enforced. The Court of Special Appeals answered "yes" to the first question. *Jackson v. State*, 120 Md.App. 113, 127, 706 A.2d 156, 163 (1998). As to the second, the court conclud-

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

ed that the agreement was of the type that the trial court could enforce, *id.* at 137, 706 A.2d at 168, but held that the trial court did not abuse its discretion in refusing to do so. *Id.* at 137, 706 A.2d at 168. Thus, the intermediate appellate court affirmed the judgment of the Circuit Court for Howard County. We shall hold, consistent with the Court of Special Appeals that the order under review is appealable and enforceable, but, unlike the holding of that court, also that it should have been enforced. Accordingly, we shall reverse.

a.

The petitioner, Valentino Maurice Jackson, was charged with child sexual abuse and related charges. He was arraigned and appearance of counsel was entered on March 14, 1997; consequently, absent a finding of good cause by the county administrative judge, or that judge's designee, for the postponement of the case beyond the time prescribed by Maryland Code (1971, 1996 Repl.Vol.), Article 27, § 591 [1] and Maryland Rule 4–271,[2] commonly referred to as the *Hicks* Rule, an

---

**1.** Maryland Code (1971, 1996 Repl.Vol.), Article 27, § 591 provides:

"(a) Setting the date.—The date for trial of a criminal matter in a circuit court:
"(1) Shall be set within 30 days after the earlier of:
"(i) The appearance of counsel; or
"(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules; and
"(2) May not be later than 180 days after the earlier of those events.
"(b) Changing date.—On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court date.
"(c) Court rules.—The Court of Appeals may adopt additional rules of practice for the implementation of this section in circuit courts."

**2.** Maryland Rule 4–271, which implements Article 27, § 591, provides, in pertinent part, as follows:

"(a) Trial date in circuit court. (1) The date for the trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall not be later than 180 days after the earlier of those events. . . . On motion of a party, or on the court's initiative, and for good cause, the county adminis-

eponym of the seminal case, *State v. Hicks*, 285 Md. 310, 403 A.2d 356, *on motion for reconsideration*, 285 Md. at 334, 403 A.2d at 368 (1979),[3] the latest that the petitioner's trial could commence was April 28, 1997. The petitioner's trial date had been set more than a month before that deadline, for March 24, 1997. Ten days before the trial date, the parties were in court in connection with certain motions filed by the petitioner. On that date, although not disclosed to the court or placed on the record, the petitioner and the State entered into an agreement calling for the State to dismiss the charges against the petitioner if DNA testing of a stain on a white fitted bed sheet, identified by the victim and her mother as the sheet on the victim's bed when the alleged sexual abuse occurred, excluded the petitioner, provided that the petitioner did not oppose the State's request for postponement of the trial date.

During the court's consideration of the petitioner's motions for a bill of particulars and to review the child/victim's Department of Social Services records, the court ruling on the former, the State requested and was granted a postponement of the trial date to May 5, 1997, a date agreed upon by the parties. The petitioner did not oppose the postponement, rather he waived "Hicks," his right to be tried within 180 days, consistent with the parties' agreement.

On April 14, 1997, the State moved to advance the trial to a date prior to April 28, the *Hicks* deadline. At the hearing on the motion, held on April 25, 1997, the State acknowledged that an agreement between it and the petitioner had been entered into pursuant to which "if the information came back

---

trative judge or that judge's designee may grant a change to a circuit court trial date."

**3.** In *State v. Hicks*, 285 Md. 310, 403 A.2d 356, *on motion for reconsideration*, 285 Md. at 334, 403 A.2d at 368 (1979), we interpreted § 591 and Rule 4–271 as mandatorily requiring all circuit court criminal cases to be tried within 180 days, and, where trial has not commenced within the prescribed period, the county administrative judge or his designee to find good cause for the postponement of the trial and the rescheduling of it beyond the 180–day period. *See also Dorsey v. State*, 349 Md. 688, 702, 709 A.2d 1244, 1250–51 (1998).

on the—on the white fitted sheet which excluded the Defendant, the State would dismiss the case." It also acknowledged that the results of DNA testing excluded the petitioner. Rather than a failure of the petitioner to perform as agreed, the State explained its refusal to honor the agreement as follows:

"When I met with the victim's mother on the 8th of April and I advised the Defendant I was—Defense attorney I was going to meet with the victim's mother, it was determined for the first time, the State's Attorney's Office got additional information, that this white fitted bed sheet which had been alluded to in police reports much earlier as being identified by the victim as her bed sheet and as being the bed sheet that was on her bed when various crimes against her had been committed by the Defendant it had come to the State's attention—State's Attorney's Office's attention on April 8th that this sheet had been used somewhere else. It had been used on the sofa. The sofa had been used by the victim's mother and someone who she had been seeing at the time."

The petitioner opposed the advancement of the trial date. His counsel pointed out that the agreement between the parties was reached only after fully discussing the case, the strengths and weaknesses on both sides. He denied seeking a postponement, noting that they "came into court fully prepared to go to trial." According to counsel, there was only "one circumstance and one circumstance alone" which prompted the agreement to postpone the case: "that if the D.N.A. on the white fitted bed sheet comes back and excludes our client you will dismiss the case."

The court denied the State's motion to advance the trial date, concluding that there was good cause to postpone the case beyond the 180 day limit quite apart from the parties' agreement. It noted: "[t]he postponement had to occur for several reasons, not the least was the D.S.S. records," the review of which "was occasioned by the Defense request." The court added: "There is no *Hicks* problem. Defendant did in fact waive *Hicks* but it wouldn't have been a problem anyway in my opinion because there was sufficient good cause

to have the trial date on May 5." The court specifically did not address whether there was an agreement, commenting:

"Now, whether or not there was an agreement between Defense and State, I don't know. There's going to have to be a full, perhaps, evidentiary hearing on that issue. But the fact of the matter was, I think it's kind of [naive], frankly for Counsel to think that if the State comes back with one piece of information that says it exculpates your client that they're not going to go forward. They could have said that on the record, Your Honor, we're waiting for some D.N.A. information. If in fact it comes back negative on Mr. Jackson, we don't have a case. They could have said that. They didn't. They apparently have other information."

The petitioner moved both to dismiss the indictment and to enforce his agreement with the State. The hearing on the motion was held on the trial date, May 5, 1997. Following the taking of testimony on the relevant issues including the testimony of counsel for the petitioner and the State with respect to the existence and terms of their agreement, the court denied the petitioner's motion. Although the court found that there was an agreement between the State and the petitioner with the terms alleged by the petitioner and that the State breached the agreement, it concluded that the petitioner was not prejudiced. Specifically, the court reasoned that, with respect to the DNA test results, the petitioner ended up in a more favorable position than he was in before the test results were in—that evidence, having excluded the petitioner, could then be used as exculpatory evidence. Nor was the court impressed by the petitioner's argument that he was prejudiced by the delay in the trial date. As to that, it said:

"The Court notes, in this Court's view, and the Court finds that it is very likely that even without the defendant having supplied the *Hicks* waiver that it is very likely that this case would have been—if not put beyond *Hicks* for the good reasons that Judge Gelfman has specified on the record of both the March 14 th and the April 25 th hearings but at a minimum if not pushed beyond *Hicks* to a date like today, it

would have been put in a posture where it would have been right up against the *Hicks* deadline."

The acting administrative judge having granted the petitioner a postponement for the purpose of appealing the court's ruling, and the petitioner noted an appeal to the Court of Special Appeals. The State moved to dismiss the appeal as a non-appealable interlocutory order, arguing that, because this is a criminal case and in criminal cases, a final judgment consists of both the verdict and the sentence, *Greco v. State,* 347 Md. 423, 432 n. 4, 701 A.2d 419, 423, n. 4 (1997); *Telak v. State,* 315 Md. 568, 575, 556 A.2d 225, 228 (1989), a ruling denying enforcement of a plea bargain is not a final judgment, the prerequisite to appealability. *See* Maryland Code (1974, 1995 Repl.Vol. § 12–301 of the Courts and Judicial Proceedings Article). The petitioner took the contrary view, contending that the appeal is permitted under the collateral order doctrine. As we have seen, the Court of Special Appeals agreed with the petitioner as to appealability, but affirmed the trial court, albeit for different reasons on the enforcement issue. Both the State and the petitioner sought certiorari, the State as to the appealability issue and the petitioner as to the enforcement issue. We granted both the petition and the cross petition. *Jackson v. State,* 350 Md. 280, 711 A.2d 871 (1998).

I.

Maryland Code (1974, 1995 Repl.Vol.) § 12–301 of the Courts & Judicial Proceedings Article provides:

"Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been sus-

pended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment."

Section 12–101(f) defines "final judgment" as "a judgment ... or other action by a court ..., from which an appeal, application for leave to appeal, or petition for certiorari may be taken." Thus, it is well settled that, to be appealable, an order or judgment ordinarily must be final. *Public Service Comm'n of Maryland v. Patuxent Valley Conservation League,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984); *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 664–666, 467 A.2d 483, 484–86 (1983); *Clark v. Elza,* 286 Md. 208, 212, 406 A.2d 922, 924–25 (1979); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams,* 284 Md. 86, 90–91, 394 A.2d 801, 803–04, 5 A.L.R.4th 1238 (1978); *Warren v. State,* 281 Md. 179, 182–183, 377 A.2d 1169, 1171–72 (1977). An exception to the final judgment rule is the collateral order doctrine. *Parrott v. State,* 301 Md. 411, 414, 483 A.2d 68, 69 (1984).

That doctrine "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court," *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984) and thus permits the prosecution of an appeal from certain interlocutory orders. First recognized by the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536–37 (1949), and subsequently adopted by this Court, *see, e.g., Goodwich v. Nolan,* 343 Md. 130, 153, 680 A.2d 1040, 1051–52 (1996); *Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995); *Town of Chesapeake Beach v. Pessoa,* 330 Md. 744, 754–55, 625 A.2d 1014, 1019 (1993); *Baltimore City Department of Social Services v. Stein,* 328 Md. 1, 10, 612 A.2d 880, 884 (1992); *Harris v. Harris,* 310 Md. 310, 315, 529 A.2d 356, 358 (1987); *Public Service Commission v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984); *Kawamura v. State,* 299 Md. 276, 282 n. 5, 473 A.2d 438, 442 n. 5 (1984), it applies to a "narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as 'final

judgments' without regard to the posture of the case." *Montgomery County, supra,* 337 Md. at 477, 654 A.2d at 880 (quoting *Harris, supra,* 310 Md. at 315, 529 A.2d at 358). To fall within the collateral order doctrine exception, an order must satisfy each of four requirements: conclusively determine the disputed question; resolve an important issue; be completely separate from the merits of the action; and be effectively unreviewable on appeal from a final judgment. *Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995) *(quoting Town of Chesapeake Beach v. Pessoa,* 330 Md. 744, 755, 625 A.2d 1014, 1019 (1993)); *see also Peat, Marwick, Mitchell & Co. v. The Los Angeles Rams Football Company,* 284 Md. 86, 92, 394 A.2d 801, 804 (1978).

■ The State concedes, as it must, that the first two requirements are met: denial of the petitioner's motion to dismiss conclusively determines—answers—the question of the enforceability of the agreement between the parties, a question which, because it could result in the dismissal of the criminal charges against the petitioner and thereby terminate the prosecution, certainly is important. It argues, however, that the latter two requirements are not met.

The order is not completely separate from the merits of the case, the State contends, because the motion, and consequently its denial, is docketed "as part and parcel of the [the petitioner's] criminal prosecution" and the agreement at issue in this case "implicated only actions with respect to the evidence and a postponement in this very case." To make its point, the State contrasts this case with *Courtney v. Harford County,* 98 Md.App. 649, 652, 656, 635 A.2d 8, 10, 11–12 (1994), noting that the order found to be appealable under the collateral order doctrine was not filed in the criminal case and that the agreement, rather than simply evidence and a postponement in the defendant's criminal case, inter alia, involved and implicated evidence of various drug transactions and dealers, multiple prosecutions, including forfeiture actions and the threat of prosecutions by the United States Attorney and the Attorney General.

With respect to the final requirement, that the order be effectively unreviewable on appeal, the State asserts that the order in this case is like many other pretrial rulings held to be unappealable interlocutory orders, citing cases involving denial of motions to dismiss on speedy trial grounds. *United States v. MacDonald*, 435 U.S. 850, 853–63, 98 S.Ct. 1547, 1549–54, 56 L.Ed.2d 18, 22–24 (1978); *Stewart v. State*, 282 Md. 557, 570–72, 386 A.2d 1206, 1212–14 (1978); *Payne v. State*, 73 Md.App. 749, 752, 536 A.2d 158, 159–60 (1988). Pointing out that the Court of Special Appeals, in *Courtney v. Harford County*, acknowledged that the order at issue in that case was technically reviewable on appeal, it argues: "Because the agreement at issue here did not implicate a plea to some lesser offense and was not undertaken primarily in an effort to avoid the expense and inconvenience of a trial, interlocutory review is unwarranted."

Although a civil case, *Clark v. Elza, supra,* 286 Md. 208, 406 A.2d 922 is instructive here. At issue in that case was the denial of a "Motion to Enforce Settlement." The plaintiffs filed a tort action for damages for injuries suffered in an automobile accident. Thereafter, the parties entered into a verbal agreement to settle that action and the case was removed from the trial schedule. Before the received the settlement check, release and order of settlement, they consulted another doctor, who told them that the injuries sustained were more extensive than settlement amount would indicate; consequently, the plaintiff's refused to accept the check or to execute the release and order of satisfaction, prompting the defendants to file, in the tort action, the motion to enforce settlement. 286 Md. at 210–11, 406 A.2d at 923–24. The trial court denied the motion and the Court of Appeals dismissed the defendant's appeal as premature. *Id.* at 211, 406 A.2d at 924. Reversing, this Court held that the denial of the motion to enforce settlement agreement was appealable under the collateral order doctrine. Addressing the two requirements at issue *sub judice,* we said:

Third, the questions bearing upon the enforceability of the settlement agreement have absolutely nothing to do with

the merits of the tort cause of action. Thus, it is "complete-
ly separate" from the principal claim. Lastly, a final judg-
ment on the merits of the underlying tort claim would
render the ruling on the settlement agreement effectively
unreviewable. One of the principal considerations in enter-
ing a pre-trial settlement agreement is the avoidance of the
expense and inconvenience of a trial. If the defendants
must proceed to a trial on the merits, this contractual
benefit will be irretrievably lost. Regardless of the outcome
of the trial or the outcome of an appeal after trial, the
defendants will have been forced to go to trial and thus will
have been deprived of a right under the contract if the
contract should have been enforced.

*Id.* at 213, 406 A.2d at 925. In support of the proposition that
a decision on the merits would render the settlement agree-
ment effectively unreviewable, the Court cited cases involving
the double jeopardy clause, *i.e., Abney v. United States,* 431
U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Neal v. State,*
272 Md. 323, 322 A.2d 887 (1974) and *Jolley v. State, supra,*
282 Md. 353, 355, 384 A.2d 91, 93 (1978), in which this Court
held that a finding that a defendant is incompetent to stand
trial in a criminal cause is immediately appealable.

The Court of Special Appeals reached the same result, and,
indeed, relied on *Clark v. Elza,* to do so, in a case involving a
plea agreement. *Courtney v. Harford County, supra.* In
that case, the defendant and the State [4] entered into a plea
agreement whereby, in return for his cooperation as detailed
in a written plea agreement and his and his wife's forfeiture of
certain property, the State would forego the prosecution of the
defendant's wife and charge the defendant with only one count
of possession of marijuana, to which it would accept a plea of
guilty and recommend a five year suspended sentence. 98

---

**4.** Also party to the agreement were the United States Attorney and the
Maryland Attorney General, both of whom agreed, in return for the
defendant's cooperation, to forego prosecuting him. *Courtney v. Har-
ford County,* 98 Md.App. 649, 652, 635 A.2d 8, 10 (1994).

Md.App. at 651–52, 635 A.2d at 9–10. The court had no difficulty concluding that whether Mr. or Mrs. Courtney breached the plea agreement was a "completely separate" issue and had nothing to do with the merits of whether they committed the underlying offenses. *Id.* at 657–58, 635 A.2d at 12. Addressing the only criterion of the collateral order doctrine it felt to be in some doubt, whether that issue would be effectively unreviewable following entry of a final judgment, the court conceded that in one sense it would be reviewable: the issue of whether the State was bound by the plea agreement could be raised and, if it were determined that the State was so bound, the convictions other than the one bargained for in the plea agreement would have to be reversed. *Id., citing State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976). Finding that construction of the requirement to be too narrow, the court stated:

> "[A] final judgment on the merits of the underlying tort claim would render the ruling on the settlement agreement effectively unreviewable. One of the principal considerations in entering a pre-trial settlement agreement is the avoidance of the expense and inconvenience of a trial. If the defendants must proceed to a trial on the merits, this contractual benefit will be irretrievably lost. Regardless of the outcome of the trial or the outcome of an [635 A.2d 13] appeal after trial, the defendants will have been forced to go to trial and thus will have been deprived of a right under the contract if the contract should have been enforced."

*Id.* at 658, 635 A.2d at 13–14, *quoting Clark v. Elza,* 286 Md. at 213, 406 A.2d at 925.

The ruling on the petitioner's motion to enforce his agreement with the State and to dismiss the indictment is like the ruling on the motion to enforce settlement in *Clark v. Elza* and the court order in *Courtney v. Harford County.* It is not dependent on the petitioner's guilt or innocence; indeed, it has absolutely nothing whatever to do with it. Moreover, what the petitioner bargained for was the right not to be tried, to

have the charges against him dismissed.[5] If that bargain means anything at all, it is that if he fulfills his end of the bargain, he does not have to go to trial and thus may not be haled into court at all. The petitioner argues:

"In Mr. Jackson's case, he enjoys a right not to be tried by virtue of the agreement reached with the State, the breach of which violates the Due Process Clause found in the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. Like the right guaranteed by the Double Jeopardy Clause, the agreement reached in this case, in order to be fully enjoyed, must be vindicated before trial. Otherwise, the agreement not to try Mr. Jackson is meaningless. To this extent, it was a deal, akin to the right under the Double Jeopardy Clause, encompassing a right not to be tried at all, the vindication of which can only occur prior to any trial."

We agree.

## II.

The Court of Special Appeals recognized the distinction drawn, including by its case law, *see Butler v. State*, 55 Md.App. 409, 416–17, 462 A.2d 1230, 1233 (1983), between plea agreements, i.e. those contemplating "a conditional plea of guilty or nolo contendere" in exchange for action by the State favorable to the defendant, and those contemplating other action, such as cooperation, by the defendant. 120 Md.App. at 132–136, 706 A.2d at 166–68. Agreeing with the State, it concluded that the agreement in this case is not a plea agreement, but "an other miscellaneous bargain," as described in *Butler*.[6] Nevertheless, noting that the agreement involved

---

**5.** We reject the State's argument that "the agreement at issue here ... was not undertaken primarily in an effort to avoid the expense and inconvenience of a trial." Whatever may have been the other reasons for the agreement, it is inconceivable that any of them could have been any more importance than the avoidance of trial, whether because of the expense involved or its inconvenience, the latter necessarily encompassing the risk of conviction.

**6.** In *Butler v. State*, 55 Md.App. 409, 428, 462 A.2d 1230, 1239 (1983), the court defined "other miscellaneous bargains" as including "certain

postponement of the trial date and, perhaps, the requirement that the petitioner waive the right to be tried within 180 days, thus consenting to a trial beyond that time limitation and implicating the validity of the consent, 120 Md.App. at 136–37, 706 A.2d at 168, the intermediate appellate court concluded that the agreement was enforceable by the court, just not presumptively enforceable. *Id.* at 137, 706 A.2d at 168. It looked instead to the totality of the circumstances and determined that the trial court properly balanced the equities. *Id.* at 137, 706 A.2d at 168.

Although conceding the persuasiveness of the petitioner's argument as to why his agreement with the state is enforceable, the State urges that we reject them. It relies on *People v. Navarroli*, 121 Ill.2d 516, 118 Ill.Dec. 414, 521 N.E.2d 891 (1988). At issue in that case was, first, whether there was a plea agreement, pursuant to which the defendant acted as an informant in various drug investigations in exchange for the State's promise to reduce the charges against him and agree to his being given probation plus a fine and, second, if so, whether it was enforceable. *Id.*, 118 Ill.Dec. 414, 521 N.E.2d at 892. The trial court ruled in favor of the defendant, finding that there was a plea ·agreement, pursuant to which the defendant had fully performed, and, although the defendant had not entered a guilty plea, ordered that it be specifically enforced. The appellate court having reversed, the Supreme Court reviewed the case at the defendant's behest. *Id.* That court affirmed the judgment of the appellate court, holding:

> "[T]he defendant has not entered a plea of guilty in reliance on the proposed plea agreement. He cannot say he was deprived of liberty by virtue of the State's refusal to abide by the terms of the claimed plea agreement. The defendant still has the option of pleading not guilty and proceeding to trial."

---

other quasi-contracts between suspect and prosecutor, the terms of which call for official action in the courtroom or on the face of the docket and which require the approval of the court."

*Navarroli,* 118 Ill.Dec. 414, 521 N.E.2d at 894, relying on *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

*Mabry* was a habeas corpus action by the defendant challenging his guilty plea. The question it presented was "whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced." *Id.* at 505, 104 S.Ct. at 2545, 81 L.Ed.2d at 441. The defendant had been offered a plea agreement, which he accepted; however, the government withdrew the offer before the plea was entered and replaced it with another, less favorable one. The defendant subsequently entered a guilty plea to the latter plea. The Supreme Court affirmed the District Court's dismissal of the petition, holding:

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here."

*Id.* at 507–08, 104 S.Ct. at 2546, 81 L.Ed.2d at 442 (footnotes omitted).

We are not persuaded. First, *Navarroli* is distinguishable from the case *sub judice.* Unlike the agreement in this case, which contemplates only the petitioner's cooperation in the State's request for postponement, the agreement in *Navarroli* contemplated the defendant's entering a guilty plea. Illinois recognizes a difference between such agreements: in the latter, "the detrimental reliance ... is the defendant's waiver of the right to a trial ... whereas [in the case of the former], parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity." *People v. Smith,* 233 Ill.App.3d 342, 174 Ill.Dec. 708, 599 N.E.2d 492, 497 (1992), quoting *Navarroli,* 118 Ill.Dec. 414, 521 N.E.2d at 896, and *U.S. v. Johnson,* 861 F.2d 510, 512 (8 th

Cir.1988). *See also People v. Starks*, 106 Ill.2d 441, 88 Ill.Dec. 35, 478 N.E.2d 350, 354 (1985) (an agreement between the State and the defendant requiring the State to dismiss charges against defendant who took and passed a polygraph examination, enforceable). In such cases, "it is the violation of 'the right not to be haled into court at all ... [which] operated to deny [defendant] due process of law.'" *Smith,* 174 Ill.Dec. 708, 599 N.E.2d at 497, *quoting Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628, 636 (1974). The principles enunciated in *Smith* and *Starks* apply equally well to the case sub judice and, indeed, could rationalize the result in *State v. Thompson,* 48 Md.App. 219, 426 A.2d 14 (1981) and *Courtney v. Harford County.*

Moreover, the dissenting opinion is more persuasive and better reasoned. As the dissenting opinion points out, *see* 118 Ill.Dec. 414, 521 N.E.2d at 898, the agreement in *Navarroli,* as also in this case, is quite different from that in *Mabry;* in *Mabry,* the defendant gave his promise to plead guilty in return for the prosecution's promise of leniency, while in *Navarroli,* the defendant actually performed in reliance on the prosecution's promise. Furthermore,

"While the defendant still remained free to go to trial, the voluntariness of this decision had been impaired by his actual performance in response to the prosecution's promise. Moreover, even had the defendant wished to plead guilty again, he could not possibly have received the same bargain that he had initially agreed to and carried out, since the prosecution, having already received the benefit of his information, no longer needed to provide him with leniency in return for it."

*Id.,* 118 Ill.Dec. 414, 521 N.E.2d at 898–99. Thus, as the dissenting justice correctly observed, the agreement in *Navarroli* was closer to the agreement in Smith, which was enforced, than to the agreement in *Mabry,* which was not.

Finally, the *Navarroli* approach is inconsistent with our cases on the enforceability of agreements between the State and the defendant which do not contemplate the defendant

pleading guilty. *See Courtney v. Harford County, supra.* and *Thompson.* In neither of these cases, did the defendant surrender, or was required to, a constitutional right as a condition to the enforcement of the agreement. They are, in fact, consistent with this Courts' cases addressing the enforceability of plea agreements, *see State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *see also State v. Parker,* 334 Md. 576, 598, 640 A.2d 1104, 1114–15 (1994); *State v. Poole,* 321 Md. 482, 497, 583 A.2d 265, 272 (1991). The basic ground rules governing the negotiation and enforcement of plea agreements were set out in *Brockman,* as to which the Court summarized: "the standard to be applied to plea negotiations is one of fair play and equity under the facts and circumstances of the case, which, although entailing certain contract concepts, is to be distinguished from ... the strict application of the common law principles of contracts." 277 Md. at 697, 357 A.2d 376. Thus, it is now well settled in this State that "when a plea bargain has been agreed to by both a proper representative of the State and a defendant, and is not in violation of any law or public policy of this State, it would be a grave error to permit the prosecution to repudiate its promises in a situation in which it would not be fair and equitable to allow the State to do so." *Id.* at 698, 357 A.2d 376.

In *Courtney v. Harford County,* the agreement contemplated a guilty plea, but also that the defendant would supply the State with certain information. After the defendant had complied with the latter requirement, the State declared the agreement null and void. Reversing the judgment of the trial court which upheld the State's determination, the Court of Special Appeals opined: "when entering into plea agreements, the State, as well as the defendant, must play by the rules. Prosecutors cannot expect the law to hold defendants to their agreements if it does not also hold prosecutors equally accountable." 98 Md.App. at 661, 635 A.2d at 14. A similar rationale was offered by the intermediate appellate court in enforcing the agreement in *Thompson*: "We think that once the State has made a bargain, it is bound to adhere to the agreement so long as the accused performs his part." 48

Md.App. at 222, 426 A.2d at 16. That agreement did not contemplate that the defendant do anything more than cooperate with the State in obtaining a postponement.

Courts in other jurisdictions have applied a similar analysis to enforce agreements between the State and a defendant that did not call for that defendant to enter a guilty plea. *Butler v. State,* 228 So.2d 421 (Fla.App.1969) (no prosecution on passage of lie detector test); *State v. Davis,* 188 So.2d 24 (Fla.App. 1966) (same); *Starks, supra,* 106 Ill.2d 441, 88 Ill.Dec. 35, 478 N.E.2d 350 (1985) (same); *Bowers v. State,* 500 N.E.2d 203 (Ind.1986) (dismissal of charges upon provision of information); *People v. Reagan,* 395 Mich. 306, 235 N.W.2d 581 (1975) (lie detector test); *State v. Platt,* 162 Ariz. 414, 783 P.2d 1206, 1206–07 (App.1989) (deferred prosecution agreement); *United States v. Carrillo,* 709 F.2d 35, 37 (9 th Cir.1983) (no prosecution in return for information). *See State v. Ashby,* 43 N.J. 273, 204 A.2d 1 (1964); *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932); *United States v. Garcia,* 519 F.2d 1343 (9 th Cir.1975).

In *Bowers,* for example, the State orally agreed to dismiss charges against the defendant if the defendant provided certain information. Enforcing the agreement, the Supreme Court of Indiana stated: "[T]he promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded. The public justifiably expects the State, above all others, to keep its bond." 500 N.E.2d at 204. *Davis* involved an agreement in which the prosecutor agreed to dismiss murder charges against the defendant if a lie detector test showed that he was truthful in his denial of guilt and the defendant agreed to plead guilty to manslaughter if it did not. The State proceeded with the prosecution even though the test result was favorable to the defendant. Affirming the dismissal of the charges, the court stated:

> "Thus, it can be seen that where a plea of guilty is entered in reliance upon a promise to dismiss other charges, the promise may be enforced and raised as a bar to prosecution. The difference between that situation and the one before us is the added act regarding the polygraph examination. De-

fendant had agreed to plead guilty to manslaughter if the test was not in his favor, but the state had agreed to dismiss the case if the results indicated defendant was telling the truth. This was a pledge of public faith—a promise made by state officials—and one that should not be lightly disregarded."

188 So.2d at 27.

Finally, the State maintains that "equity does not warrant enforcement of the agreement at issue." In support, it points to the seriousness of the charges, and argues that the petitioner was not prejudiced by the breach of the agreement, noting the fact that the DNA results were favorable to the petitioner and that a postponement of the case for good cause was highly likely in any event, given the in camera inspection that the petitioner himself had requested.

The petitioner responds:

"As for the seriousness of the charges, this simply has nothing to do with whether or nor an agreement between the State and defense should be enforced. The prosecutor was well aware of the seriousness of the charges before he struck the deal to dismiss the charges.

"With respect to the argument that Mr. Jackson had just requested an in camera review of voluminous documents and records, it must be noted that this request came *before* the deal to continue the case and to waive Hicks had been reached. The hearing before Judge Gelfman began with a discussion of various defense motions including a motion that the court review DSS records .... in examining the number of records for review, Judge Gelfman asked if the trial date could be met given the number of records .... it was at this point that defense counsel and the prosecutor spoke, off the record, about the deal and it was at this point that the prosecutor agreed to the deal.... Judge Gelfman then took the Hicks waiver from Mr. Jackson and the case was continued .... thus it is clear that once the agreement

to continue was struck, review of the voluminous records and its effect on the trial was immaterial."

We agree.

In any event, what the State really is arguing is that it made an unwise or bad deal. Dissenting in *State v. Ashby*, 81 N.J.Super. 350, 195 A.2d 635, 646 (1963), rev'd 43 N.J. 273, 204 A.2d 1 (1964), Judge Goldmann pointed out:

> "In this case the prosecutor ... promised defendant that the indictments pending against him would be dismissed. The wisdom of the agreement aside, that promise constituted a pledge of the public faith which should not have been repudiated. The morals of the market place are a poor guide for the sovereign's actions."

The New Jersey Supreme Court undoubtedly was persuaded by that observation. And it certainly is an appropriate response to the State's equity argument.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH INSTRUCTIONS TO DISMISS THE INDICTMENT AGAINST THE PETITIONER. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HOWARD COUNTY.